T.C. Memo. 2014-205

UNITED STATES TAX COURT

GUST KALAPODIS AND FRANCES L. KALAPODIS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26742-12.                     Filed October 6, 2014.

Gust Kalapodis and Frances L. Kalapodis, pro se.

<u>Nancy P. Klingshirn</u> and <u>Dennis G. Driscoll</u>, for respondent.

MEMORANDUM OPINION

BUCH, <u>Judge</u>:  Respondent issued Mr. and Mrs. Kalapodis a notice of

deficiency for the 2008 taxable year increasing their gross income, denying

various deductions, and imposing an addition to tax for failure to timely file under

[*2] section 6651(a)(1).[1]  After concessions by the parties, the sole issue remaining for decision is whether the Kalapodises are entitled to a charitable contribution deduction for scholarship payments made by a trust.  We hold that they are not.

## Background

In 2006 Mr. and Mrs. Kalapodis received $75,000 in life insurance proceeds from the passing of their son.  That same year, the Kalapodises used the life insurance proceeds to establish the John Gust Kalapodis Memorial Scholarship Fund in honor of their son.  The scholarship fund was structured as an irrevocable trust.  The trust agreement states that income from the trust is to be used exclusively for educational purposes.  The trust is irrevocable, although the Kalapodises reserved the right to amend the trust so long as all funds would be distributed to students solely for educational purposes.  The trust has not applied for or received tax-exempt status as a charitable organization under section 501.

During 2008 the trust made payments of $2,000 each to three high school students.  Each payment was by check directly to the student.  The money for the

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All monetary amounts are rounded to the nearest dollar.

**[*3]** payments came from the trust's investment income, and the checks were written on an account owned solely in the name of the trust.

In filing their 2008 Form 1040, U.S. Individual Income Tax Return, the Kalapodises did not include the investment income from the trust in their gross income; however, they claimed the $6,000 of payments as a charitable contribution deduction on their Schedule A, Itemized Deductions. On August 9, 2012, respondent issued the Kalapodises a notice of deficiency making multiple adjustments. One of those adjustments was to disallow a significant amount of their claimed charitable contribution deduction. As is relevant here, respondent disallowed the portion of the claimed charitable contribution deduction that originated in the trust. While living in Ohio, the Kalapodises timely petitioned. After concessions by the parties, this case was submitted without trial under Rule 122 with the only remaining issue being whether the Kalapodises are entitled to deduct the $6,000 paid by the trust.

## Discussion

### I. Standard of Review

Except in limited circumstances, in a deficiency proceeding the positions of the parties are reviewed de novo and the Court will not "'look behind a deficiency notice to examine the evidence used or the propriety of respondent's motives or of

[*4] the administrative policy or procedure involved in making his determinations.'"[2] The rationale underlying this rule is that the taxpayer's liability must be based on the merits of the case before us and not any previous administrative record.[3]

Most of the Kalapodises' brief addresses difficulties they encountered with various people from the Internal Revenue Service. Our role here is to decide whether the Kalapodises are entitled to the charitable contribution deduction and not to revisit the manner in which the IRS conducted its audit.

## II. Burden of Proof

The Commissioner's determinations in the notice of deficiency are generally presumed correct, and taxpayers bear the burden of proving otherwise.[4] Although the burden may shift to the Commissioner under section 7491(a) with respect to a relevant factual issue, the Kalapodises do not claim that the burden has shifted to respondent, and likewise we do not find it appropriate to shift the burden to respondent.

---

[2]TG Mo. Corp. v. Commissioner, 133 T.C. 278, 283 (2009) (quoting Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974)).

[3]Greenberg's Express, Inc. v. Commissioner, 62 T.C. at 327.

[4]Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

[*5] III. Charitable Contribution Deduction

Income tax deductions are a matter of legislative grace, and the burden of proving entitlement to any claimed deduction rests on the taxpayer.[5] Subject to applicable limitations, section 170(a) allows a deduction for any charitable contribution as long as the contribution can be verified under regulations prescribed by the Secretary.[6] In relevant part, section 170(c) defines a charitable contribution as

> a contribution or gift to or for the use of--
>
> (1) A State, a possession of the United States, or any political subdivision of any of the foregoing, or the United States or the District of Columbia, but only if the contribution or gift is made for exclusively public purposes.
>
> (2) A corporation, trust, or community chest, fund, or foundation--
>
> (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States;
>
> (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster national or international amateur

---

[5]INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); see also Rule 142(a).

[6]Sec. 170(a)(1), (b).

[*6] sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals;

(C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and

(D) which is not disqualified for tax exemption under section 501(c)(3) by reason of attempting to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office.

A contribution or gift by a corporation to a trust, chest, fund, or foundation shall be deductible by reason of this paragraph only if it is to be used within the United States or any of its possessions exclusively for purposes specified in subparagraph (B). Rules similar to the rules of section 501(j) shall apply for purposes of this paragraph.

(3) A post or organization of war veterans, or an auxiliary unit or society of, or trust or foundation for, any such post or organization--

(A) organized in the United States or any of its possessions, and

(B) no part of the net earnings of which inures to the benefit of any private shareholder or individual.

(4) In the case of a contribution or gift by an individual, a domestic fraternal society, order, or association, operating under the lodge system, but only if such contribution or gift is to be used exclusively for religious, charitable, scientific,

[*7] literary, or educational purposes, or for the prevention of cruelty to children or animals.

(5) A cemetery company owned and operated exclusively for the benefit of its members, or any corporation chartered solely for burial purposes as a cemetery corporation and not permitted by its charter to engage in any business not necessarily incident to that purpose, if such company or corporation is not operated for profit and no part of the net earnings of such company or corporation inures to the benefit of any private shareholder or individual.

For purposes of this section, the term "charitable contribution" also means an amount treated under subsection (g) [relating to amounts paid to maintain certain students as members of a taxpayer's household] as paid for the use of an organization described in paragraph (2), (3), or (4).

In order to substantiate monetary charitable contributions, the taxpayer must maintain one of the following: (1) a canceled check; (2) a receipt from the donee charitable organization showing the name of the donee, the date of the contribution, and the amount of the contribution; or (3) other reliable written records showing the name of the donee, the date of the contribution, and the amount of the contribution.[7] However, a charitable contribution of $250 or more must be substantiated by a contemporaneous written acknowledgment of the

---

[7]Van Dusen v. Commissioner, 136 T.C. 515, 533 (2011); sec. 1.170A-13(a)(1), Income Tax Regs.

[*8] contribution by the donee organization.[8]  The acknowledgment must contain: (1) a description of the amount of cash or a description of any property contributed, (2) a statement as to whether the donee organization provided any goods or services in consideration for any property contributed, and (3) a description and good-faith estimate of the value of any provided goods or services or if such goods or services consist of intangible religious benefits, a statement to that effect.[9]  In order for the acknowledgment to be contemporaneous, it must be obtained on or before the earlier of the date on which the taxpayer files a return for the taxable year in which the contribution was made or the due date (including extensions) for filing such return.[10]

The Kalapodises are not entitled to the $6,000 charitable contribution deduction for multiple reasons.

First, it was the trust--not the Kalapodises--that paid the money out as scholarships.  Section 671 and the provisions that follow it lay out the rules for when a taxpayer is treated as the owner of a trust.[11]  If treated as the owner of the

---

[8]Sec. 170(f)(8)(A).

[9]Sec. 170(f)(8)(B).

[10]Sec. 170(f)(8)(C).

[11]Secs. 671-679.

**[*9]** trust, the Kalapodises might have been entitled to report the tax attributes of the trust on their personal return when computing their personal tax liability. But the trust agreement states that the trust is irrevocable; and in reviewing the trust agreement, we do not see, nor have the Kalapodises directed us to, any provision that would have the effect of allowing the Kalapodises to report the tax attributes of the trust on their personal return. Just as they did not report the trust's income on their return, they are not entitled to deduct any charitable contributions the trust might have made.

Second, even if the Kalapodises could report the trust's tax attributes on their personal return, they would still not be entitled to a charitable contribution deduction because the trust's payments do not qualify as charitable contributions. Section 170(c) lays out specific rules for who must be the recipient of a contribution or gift in order for the payment to qualify as a charitable contribution deduction. Here, the trust paid the money directly to the students, and the students do not fall into any of the recipient categories under section 170(c).

Lastly, the Kalapodises did not produce any evidence of a contemporaneous written acknowledgment of the charitable contribution. The closest thing to a contemporaneous written acknowledgment that the Kalapodises provided was the list of charitable contributions that they attached to their 2008 Schedule A, which

**[*10]** showed three $2,000 contributions. That document does not show the dates of the contributions or any of the other information required to comply with the more stringent substantiation requirements for contributions over $250.

IV. Conclusion

The Kalapodises are not entitled to a charitable contribution deduction for the three $2,000 payments by the trust. They are not treated as owners of the trust and may not report its tax attributes. Even if they could report the trust's tax attributes, the payments made by the trust do not qualify as charitable contributions. And even if those payments had qualified, the Kalapodises did not meet the substantiation requirements for charitable contributions in excess of $250.

To reflect the foregoing and the concessions of the parties,

Decision will be entered

under Rule 155.